739 A.2d 104

Margaret R. CONNOLLY, Appellant,

v.

COMMONWEALTH of Pennsylvania, MEDICAL PROFESSION-AL LIABILITY CATASTROPHE LOSS FUND and Thomas Callahan, Director, Medical Professional Liability Catastrophe Loss Fund, Appellee.

Supreme Court of Pennsylvania.

Argued April 27, 1998.

Decided April 20, 1999.

2

Michael R. Libor, Jennifer H. Adams, Philadelphia, for appellant Margaret R. Connolly.

B. Craig Black, Harrisburg, for CAT Fund and Thomas Callahan.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

The issue before this Court is whether the Medical Professional Liability Catastrophe Loss Fund (CAT Fund) has a duty to defend claims that do not arise from the professional liability of a medical provider. Because we determine that the CAT Fund's liability is limited by statute to those claims

arising from the provision of, or failure to provide, medical services, we affirm the decision of the Commonwealth Court.

The facts in this appeal are not in dispute. In 1992, the executor of the estate of Lilla Semeraro filed suit in the United States District Court for the Eastern District of Pennsylvania against appellant's husband John M. Connolly, Jr., M.D., his medical practice, and appellant, alleging that Dr. Connolly negligently treated Semeraro in 1984 by failing to advise her to seek follow-up care for colon cancer, thereby causing her death from cancer. The federal complaint alleged that appellant was an employee and corporate officer of her husband's medical practice which was organized as a professional corporation. The complaint further alleged that appellant breached a duty to Semeraro to inform her of Dr. Connolly's progressive mental and physical deterioration resulting from Alzheimer's disease and that Semeraro did not seek medical care from a different physician because of appellant's breach of that alleged duty.

The CAT Fund defended Dr. Connolly's estate and his professional corporation in the Semeraro federal action. The CAT Fund, however, declined to defend or provide coverage to appellant for any damages assessed against her or the professional corporation to the extent that the damages resulted from her actions because the claims against her were not for "professional liability" as required by Section 701 of the Healthcare Services Malpractice Act (Act).[1]

The CAT Fund settled the Semeraro federal action and obtained a release for all defendants, including appellant, and paid the entire settlement from CAT Fund monies. However, the CAT Fund did not pay any of appellant's attorney's fees or costs for defending the Semeraro action. Appellant then filed suit against the CAT Fund in the Commonwealth Court seeking declaratory judgment that the CAT Fund was required to defend her in the Semeraro action and further seeking damages for attorney's fees and costs she incurred in defending that action. The parties filed cross-motions for

---

1. 40 P.S. § 1301.101 *et seq.*

4

summary judgment, and the Commonwealth Court granted the CAT Fund's motion holding that the CAT Fund had no duty to defend appellant under the Act. We agree.

Section 605 of the Act [2] provides:

In the event that any claim is made against a health care provider subject to the provisions of Article VII and is filed more than four years after the breach of contract or tort occurred which is filed within the Statute of Limitations, such claim shall be defended and paid by the [CAT] Fund established pursuant to Section 701.

Appellant argues that this section obligated the CAT Fund to defend her because the definition of health care provider in the Act is broad. The Act states:

"[h]ealth care provider" means a primary care center or a person, corporation, facility, institution, or other entity licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, an osteopathic physician or surgeon, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center, and except as to section 701(a), an officer, employee or agent of any of them acting in the course and scope of his employment.[3]

40 P.S. § 1301.103. The thrust of appellant's argument is that, as an officer, employee or agent of her husband's professional corporation, she is entitled to CAT Fund coverage.

This contention, however, overlooks the plain language of § 605 of the Act which expressly provides that coverage is subject to the provisions of Article VII of the Act generally and § 701 specifically. Section 701(d) [4] of the Act provides in pertinent part:

2. 40 P.S. § 1301.605. The quoted section is the version of § 605 in effect at the time of the Semeraro action.

3. Section 701(a), 40 P.S. § 1301.701(a), requires all health care providers to insure their professional liability with an primary insurer licensed or approved by the Commonwealth of Pennsylvania or provide proof of self-insurance. The definition of health care provider exempts officers, employees or agents from insuring with a primary carrier.

4. 40 P.S. § 1301.701(d).

There is hereby created a contingency fund for the purpose of paying all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the fund as a consequence of any claim for professional liability brought against such health care provider as a defendant . . .

Section 701 clearly limits the CAT Fund's liability to losses as a consequence of any claim for professional liability. Professional liability is not defined in the Act; however "professional liability insurance" is defined in § 103 [5] of the Act as:

[i]nsurance against liability on the part of a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of medical services which were or should have been provided.

From this definition of the scope of insurance coverage under the Act, we can reasonably infer that professional liability therefore arises from the provision of medical services or failure to provide appropriate medical services.

Appellant does not contend that she provided medical services to Semeraro or failed to provide medical services to Semeraro. Rather, the allegations against appellant arose from an alleged duty on appellant's part to advise her husband's patients that, due to his failing mental condition, he was not capable of providing adequate medical care or advice to his patients and that they should therefore seek medical attention from a different physician. According to allegations in the Semeraro action, since appellant did not so advise her husband's patients, she breached a perceived duty to those patients.

■ The CAT Fund's statutory mandate requires it to pay all awards, judgments and settlements for loss or damages against a health care provider as a consequence of any claim for professional liability. 40 P.S. § 1301.701(d). Section 701(d), however, should not be read so broadly as urged by appellant to include every injury or claim arising as a consequence of the provision of services by a medical provider. The

5. 40 P.S. § 1301.103.

CAT Fund's liability, due to its stated purpose of providing to health care providers coverage in excess of their primary professional liability insurance,[6] must be limited to injuries and damages arising directly from the provision or failure to provide medical services. To extend the CAT Fund's potential liability beyond claims directly arising from professional liability would unfairly burden the fund's resources and the health care providers who pay significant surcharges into the fund.

Accordingly, since appellant's alleged liability did not arise from the provision of medical services, the CAT Fund was not obligated to defend appellant in the Semeraro action, and the decision of the Commonwealth Court is affirmed.

---

6. The Act states at 40 P.S. § 1301.102:

It is the purpose of this act to make available professional liability insurance at a reasonable cost, and to establish a system through which a person who has sustained injury or death as a result of tort or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim and the determination of fair and reasonable compensation.