**ST. JOSEPH MEDICAL CENTER and Catholic Health Initiatives, Petitioners**

v.

**The MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 1, 2004.

Decided July 27, 2004.

Christopher A. Stump, Lancaster, for petitioners.

Elit R. Felix, II, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, and COHN, Judge (P.), and MIRARCHI, JR., Senior Judge.

OPINION BY President Judge COLINS.

Before this Court in its original jurisdiction are cross-motions for summary relief filed respectively by St. Joseph Medical Center and its parent organization, Catholic Health Initiatives (hereinafter referred to collectively as St. Joseph), and by The Medical Professional Liability Catastrophe Loss Fund (hereinafter referred to as the Fund).

St. Joseph initiated this declaratory judgment action by amended complaint filed in this Court on or about April 24, 2001, seeking a declaration that two underlying medical malpractice actions, one identified as the Michelle Doe claim, and one identified as Jane Doe v. St. Joseph Medical Center (hereinafter referred to as the underlying actions) were "professional liability" claims pursuant to the Health Care Services Malpractice Act (the Act),[1] for purposes of excess coverage under the Fund. The Michelle Doe claim, commencing on or about September 1996, was settled before a formal complaint was filed with the Berks County Court of Common Pleas. The Jane Doe claim, however, was commenced by the filing of a civil action in the Berks County Court of Common Pleas on or about May 22, 1997.

Both underlying actions were brought for damages allegedly sustained by patients who averred that St. Joseph was negligent in its hiring, supervision, and monitoring of a particular EEG technician who allegedly engaged in sexual misconduct toward patients while conducting EEG tests. Both underlying actions were settled, and thereafter, St. Joseph asked the Court to direct the Fund to reimburse St. Joseph in the amount of $850,000.00, which represented the excess coverage amount attributable to the Fund after St. Joseph's settlement of the underlying actions, plus interest and costs. Additionally, on or about April 20, 2001, St. Joseph filed an amended complaint to assert a bad faith claim, pursuant to this Court's allowance.

---

1. Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §§ 1301.101–1301.1006.

On September 4, 2001, the Fund filed an answer to St. Joseph's amended complaint alleging among other things that the underlying actions did not involve a "medical incident" as defined by St. Joseph's professional liability insurance policy, and that the injuries sustained by the patients were not the result of "the furnishing of medical services which were or should have been provided" under the Act.

In support of its motion for summary relief, St. Joseph avers that professional liability coverage under the Act requires (1) a claim or settlement (2) for loss or damages (3) against a health care provider (4) as a consequence of any claim for professional liability. St. Joseph concedes that the underlying actions resulted in settlements for loss or damages against a health care provider, but maintains that the issue before this Court is whether the underlying actions alleged "professional liability" claims, that is, those arising from "the provision of medical services." The standard for determining whether a claim arises from the provision of medical services is, according to St. Joseph, whether the conduct at issue requires "medical or professional skill and training."

In the present matter, St. Joseph argues that the challenged conduct at issue in the underlying actions is whether St. Joseph breached the standard of care it owed directly to its patients pursuant to *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991). Specifically, St. Joseph contends that the hiring, supervision, and/or monitoring of hospital health care professionals require professional skill and training and that therefore, the underlying actions set forth professional liability claims covered by the Act. Finally, St. Joseph contends that previously the Fund provided coverage in other corporate negligence claims involving alleged sexual misconduct by hospital employees. It is St.

Joseph's position that the Fund's own prior interpretations of the Act support a finding that the present underlying actions arising from St. Joseph's alleged corporate negligence are professional liability claims.

The Fund, in opposing St. Joseph's application for summary relief and in support of its own cross-motion for summary relief, argues that the applicability of the Act to specific fact patterns is determined by the Act's plain language and by Commonwealth appellate decisions with respect to similar issues arising in similar factual circumstances. The Fund contends that the Act states in plain terms that otherwise eligible health care providers are entitled to the Fund's available statutory benefits if and only if the claim against the provider constitutes a "claim for professional liability," pursuant to Section 701(d) of the Act, 40 P.S. § 1301.701(d), and involves an "injury or death resulting from the furnishing of medical services which were or should have been provided[,]" Section 103 of the Act, 40 P.S. § 1301.103. Further, avers the Fund, our Supreme Court has held that conduct constitutes professional health care services if and only if the specific act causing harm to the patient involves a "medical skill associated with specialized training" and in support of this relies upon *Physicians Insurance Co. v. Pistone,* 555 Pa. 616, 726 A.2d 339 (1999), and *Connolly v. Medical Professional Liability Catastrophe Loss Fund,* 559 Pa. 1, 739 A.2d 104 (1999).

In this regard, the Fund contends this Court has held that: (1) the Act mandates the existence of a direct causal nexus between the act giving rise to the injury at issue and the provision of medical services, and (2) "basic day-to-day operations [such as "hygienic food handling, pest control programs and general dietary supervision"] . . . do not require the type of medical skills associated with special-

ized training as contemplated by the Act's definition of professional liability insurance." *Stenton Hall Nursing & Rehabilitation Center v. Medical Professional Liability Catastrophe Loss Fund*, 829 A.2d 377 (Pa.Cmwlth.2003). Applying the foregoing guidelines, the Fund avers that St. Joseph's allegedly negligent supervision of the EEG technician accused of sexually assaulting female patients in the underlying actions does not involve "professional liability" or the "furnishing of medical services that were or should have been provided" because preventing an employee from sexually assaulting patients does not involve any "medical skill associated with specialized training" of the hospital's management staff. The Fund further maintains that the doctrine of "corporate negligence" is limited to instances of professional medical liability insofar as hospitals previously were subject to liability for general negligence.

Upon consideration of the present matter and the parties' respective arguments, we deny St. Joseph's motion for summary relief and grant the Fund's motion for summary relief. In determining whether the two underlying actions brought against St. Joseph can properly be deemed "professional liability" claims pursuant to the Act for purposes of coverage under the Fund, we find the results reached by our Supreme Court in *Pistone* and *Connolly* relevant to the present matter. In *Pistone*, 555 Pa. at 621–22, 626, 726 A.2d at 342, 344, the Supreme Court stated:

> Consistent with the definition of "professional acts or services" set forth in Marx, the majority of jurisdictions have concluded that professional liability policies do not provide coverage for health care practitioners who sexually assault their patients. David S. Florig, Insurance Coverage for Sexual Abuse or Molestation, 30 Tort & Ins. L.J. 699, 724 (1995).

. . . .

Some jurisdictions look to the nature of the services provided by the physician at the time the sexual assault takes place when determining whether the act constitutes rendering professional services. In *St. Paul Fire & Marine Ins. Co. v. Asbury*, 149 Ariz. 565, 720 P.2d 540 (Ct.App.1986), patients alleged that their physician engaged in improper clitoral manipulation during their gynecological examinations. The court held that in such a situation, a sexual assault is "intertwined with and inseparable from the services provided."

. . . .

With regard to whether specific acts are professional health care services, we agree with the Marx [v. Hartford Accident and Indemnity Co., 183 Neb. 12, 157 N.W.2d 870 (1968)] definition of professional acts or services as applied to the medical profession by the Supreme Court of Massachusetts in Roe. *This standard looks to whether the act that caused the alleged harm is a medical skill associated with specialized training.* Because Dr. Pistone's acts clearly fail to meet this test, the trial court properly granted summary judgment to the Appellees.

[Emphasis added; footnotes and citation omitted]. Similarly, in *Connolly v. Medical Professional Liability Catastrophe Loss Fund*, 559 Pa. at 5–6, 739 A.2d at 106, our Supreme Court stated:

> Section 701 clearly limits the CAT Fund's liability to losses as a consequence of any claim for professional liability. Professional liability is not defined in the Act; however "professional liability insurance" is defined in § 103 of the Act as:

[i]nsurance against liability on the part of a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of medical services which were or should have been provided.

From this definition of the scope of insurance coverage under the Act, we can reasonably infer that professional liability therefore arises from the provision of medical services or failure to provide appropriate medical services.

. . . .

The CAT Fund's statutory mandate requires it to pay all awards, judgments and settlements for loss or damages against a health care provider as a consequence of any claim for professional liability. 40 P.S. § 1301.701(d). Section 701(d), however, should not be read so broadly ... to include every injury or claim arising as a consequence of the provision of medical services by a medical provider. The CAT Fund's liability ... must be limited to injuries and damages arising directly from the provision or failure to provide medical services. To extend the CAT Fund's potential liability beyond claims directly arising from professional liability would unfairly burden the fund's resources and the health care providers who pay significant surcharges into the fund.

(Footnote omitted.) Applying the foregoing conclusions and rationale set forth in both *Pistone* and *Connolly* to the matter before us, we concur with the Fund's contention that St. Joseph's negligent supervision of the EEG technician accused of sexually assaulting female patients in the underlying actions does not constitute "professional liability" or involve any "medical skill associated with specialized training" of the hospital staff in the "fur- nishing of medical services that were or should have been provided."

Accordingly, we deny the motion for summary relief filed by St. Joseph and grant the motion for summary relief filed by the Fund.

### ORDER

AND NOW, this 27th day of July 2004, the motion for declaratory relief and for summary relief filed by St. Joseph Medical Center and Catholic Health Initiatives in the above-captioned matter is hereby DE-NIED; the motion for summary relief filed by The Medical Professional Liability Catastrophe Loss Fund is hereby GRANTED.