**POLYCLINIC MEDICAL CENTER, Petitioner**

v.

**MEDICAL CARE AVAILABILITY AND REDUCTION OF ERROR FUND, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 29, 2010.

Decided Jan. 4, 2011.

Reconsideration and/or Reargument En Banc Denied Feb. 2, 2011.

Paul R. Walker, Harrisburg, for petitioner.

Christopher J. Knight, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge PELLEGRINI.

Before the Court is what was originally an appeal of Polyclinic Medical Center (Hospital) from the Medical Care Avail-

ability and Reduction of Error Fund's (Mcare) denial of professional liability insurance to Hospital with regard to a claim filed by Elise Lyon, a psychiatric unit patient (Patient), against Hospital following an injury Patient allegedly suffered at the hands of another of Hospital's patients, Travis Zang (Zang). Before the Insurance Commissioner could issue a determination, the case was transferred to this Court's original jurisdiction pursuant to our Supreme Court's decision in *Fletcher v. Pennsylvania Property and Casualty Insurance Guaranty Association*, 603 Pa. 452, 985 A.2d 678 (2009), and, pursuant to an order of this Court, a hearing examiner rendered a proposed decision to which Mcare filed exceptions. For the following reasons, we conclude that Mcare is not required to provide coverage to Hospital for Patient's claim.

This case arises from an underlying claim of Patient against Hospital, which is being stayed until we rule on the instant matter. Hospital is contesting Patient's claim against it, but for the purposes of the instant matter only, both Hospital and Mcare are accepting Patient's allegations as true.

On December 20, 1993, Patient and her husband sued Hospital and Zang for personal injuries. The complaint alleged that both Patient and Zang were in Hospital's psychiatric unit when Zang took a wheelchair that was among several openly stored in the unit. Zang suffered from no condition requiring use of a wheelchair. He rode the wheelchair into the back of Patient's leg, causing her to experience pain in her left ankle and leg. This developed into Reflex Sympathetic Dystrophy, a condition causing permanent debilitating pain in her ankle and leg. Patient claimed that Hospital is both vicariously and directly liable for the supervision, training and monitoring of its employees who failed to properly supervise Zang, allegedly a particularly unruly and violent patient, allowing him access to the wheelchair. Hospital's negligence stemmed from its failure to properly store and supervise its wheelchairs and its failure to properly supervise its staff and care for its patients, including placing Zang in the locked side of the psychiatric unit where he would not have had access either to wheelchairs or Patient. In response, Hospital filed an answer and new matter in which it raised the defense of immunity pursuant to the Pennsylvania Mental Health Procedures Act (MHPA)[1] because the complaint only raised the allegation of negligence rather than willful misconduct or gross negligence as required by the MHPA.

In support of her allegations, Patient offered the expert report of Robert Barron, M.B.A., who opined that Hospital failed to maintain a safe environment for its patients by allowing wheelchairs, potentially dangerous objects, to be left unattended in the open half of the psychiatric ward, where both Patient and Zang were, while forbidding them from the locked half of the ward. In addition, Zang's medical records showed that he had a long history of aggressive and violent behavior, including in the days before the incident, and the deposition testimony of other patients highlighted Hospital's failure to keep Zang away from the wheelchairs or move him to the locked side of the psychiatric ward despite Hospital's knowledge that Zang posed a danger to others. Hospital filed two motions for summary judgment, one in 1996 and the other in 2003, both of which the trial court denied without opinion.

█ With that necessary context, we return to the issue of whether Mcare is required to provide coverage to Hospital

---

1. Act of July 9, 1976, P.L. 817, *as amended*, 50 P.S. § 7114.

for liability resulting from this incident. Following institution of suit, Hospital's basic professional liability insurer accepted coverage for Patient's action and, in 1994, submitted the required claim form to Mcare. For some unknown reason, Mcare did not act until 2005 when it denied coverage,[2] stating that the Act only provided professional liability insurance for "injuries or death resulting from the furnishing of medical services."[3] Here, Patient's alleged injuries, Mcare claimed, were not caused by the furnishing of medical services.

Hospital appealed to the Insurance Commissioner and a factual record was created before the Insurance Department's Administrative Hearings Office. This record includes the record from the underlying action against Hospital. Additionally, the record includes deposition testimony relating to the nature of Patient's claim and the policies and procedures of Hospital's psychiatric unit regarding patient care in general, including a lengthy orientation manual and the oversight of Zang in particular. The purpose of this record was to show that the alleged injury inflicted on Patient by Zang was in the context of "furnishing medical services" rather than being an ordinary negligence case. Before the Insurance Commissioner could issue a determination, pursuant to *Fletcher*, the case was transferred to this Court's original jurisdiction. A hearing examiner was appointed to file a proposed decision and order to which the parties could file exceptions with this Court.

Before the hearing examiner, Hospital argued that if Patient's allegations are believed, her alleged injuries resulted from the psychiatric staff's failure to provide medical services to her by failing to recognize that Zang was a danger who should have been placed in the locked half of the unit. Hospital further contended that the storing and securing of wheelchairs is part of the professional care and treatment of patients in the unit.

Mcare argued that this case is only about the failure to monitor the storage of wheelchairs which, even in a psychiatric unit, does not constitute the furnishing of medical services. Rather, Patient's claim is one for general negligence regarding maintaining a safe environment for patients, which does not require medical skills associated with specialized training, the standard for deciding whether conduct constituted the furnishing of medical services.

---

2. This case is governed by the Health Care Services Malpractice Act (the Act), Act of October 15, 1975, P.L. 390, 40 P.S. § 1301.101–1301.1006. The Act was amended in 1996 and repealed in 2002 by the Medical Care Availability and Reduction of Error Fund, Act of March 20, 2002, P.L. 154, 40 P.S. § 1303.101–1303.1115. However, because of the date of the institution of this action, the Act as it was before the 1996 amendments applies.

3. Section 701(d) of the Act, 40 P.S. § 1301.701(d), provides, in relevant part:
There is hereby created a contingency fund for the purpose of paying all awards, judgments and settlements for loss or damages against a health care provider entitled to participate in the fund as a consequence of any claim for professional liability brought against such health care provider as a defendant or an additional defendant to the extent such health care provider's share exceeds its basic coverage insurance in effect at the time of the occurrence. . . .

The term "professional liability" is not defined in the Act, but Section 103 of the Act, 40 P.S. § 1301.103, defines "professional liability insurance" as:
[I]nsurance against liability on the part of a health care provider arising out of any tort or breach of contract causing injury or death resulting from the *furnishing of medical services* which were or should have been provided.
(Emphasis added.)

The hearing examiner recommended that Mcare be required to provide coverage to Hospital for Patient's claim. She concluded that the supervision and monitoring of potentially violent patients in a psychiatric unit requires medical skills associated with specialized training, and the failure of the trained psychiatric unit staff to recognize Zang's conduct as dangerous constituted the failure to furnish medical services under the Act. Mcare filed exceptions to the proposed decision.

Mcare contends that it is restricted to providing insurance coverage to torts or breaches of contract that cause injury resulting from the furnishing of medical services. It argues that not all claims against a health care provider constitute medical services. Rather, the health care provider must be liable due directly to the provision of medical services or the lack of such provision.[4] Mcare argues that Patient did not assert a medical professional negligence cause of action because Patient's complaint shows that she asserts no claim of negligent provision of medical services, just basic negligence by a third party that happened to have occurred while she was a patient at Hospital.

Hospital responds that the claims in Patient's complaint do relate to the furnishing of medical services, in this case, a corporate negligence claim against Hospital relating to the negligent hiring and supervision of hospital employees, which is a failure to render adequate medical services. Furthermore, that portion of Patient's complaint alleging that the improper storage of wheelchairs led to Patient's injury is inseparable from the alleged failure of Hospital to properly treat Patient and to recognize that Zang was a danger to others.[5]

Section 103 of the Act defines "professional liability insurance" as:

[I]nsurance against liability on the part of a health care provider arising out of any tort or breach of contract causing injury or death resulting from the *furnishing of medical services* which were or should have been provided.

(Emphasis added.) Our Supreme Court defined "furnishing of medical services" as "whether the act that caused the alleged harm is a medical skill associated with specialized training." *Pistone*, 555 Pa. at 626, 726 A.2d at 344. Not all negligence cases against health care providers deal with the furnishing of medical services because they do not all allege harm caused by the application of medical skills associated with specialized training, and, thus, do not fall within the parameters of the Act.

Because all of the cases cited by both Mcare and Hospital on when an injury is

4. In support of this proposition, Mcare cites *Physicians Insurance Company v. Pistone*, 555 Pa. 616, 726 A.2d 339 (1999) (doctor who sexually assaulted patient was not engaged in a medical skill associated with specialized training); *Connolly v. Medical Professional Liability Catastrophe Loss Fund*, 559 Pa. 1, 739 A.2d 104 (1999) (the wife/employee of a doctor with dementia did not warn patients of her husband's shortcomings before he misdiagnosed patient); and *Stenton Hall Nursing & Rehabilitation Center v. Medical Professional Liability Catastrophe Loss Fund*, 829 A.2d 377 (Pa.Cmwlth.2003) (nursing home patient died from salmonella poisoning due to unsanitary conditions in the home).

5. Hospital argues that the cases cited by Mcare are all distinguishable because none of them dealt directly with the medical care or treatment that the patients received. Rather, the present case is more like *Strine v. Commonwealth*, 586 Pa. 395, 894 A.2d 733 (2006), in which the act of giving a medically-prescribed bath to a bedridden patient who died because the water was too hot did constitute the furnishing of medical services under the Act because giving that bath required specialized medical training.

determined to be the result of the furnishing of medical services deal with injuries caused by health care providers or their agents and not third parties, we must instead examine the definitional sections of the Act to determine how to proceed when the injury is caused by a third party. Section 102 of the Act, 40 P.S. § 1301.102, entitled "Purpose", provides:

It is the purpose of this act to make available professional liability insurance at a reasonable cost, and to establish a system through which a person who has sustained injury or death *as a result of tort or breach of contract by a health care provider* can obtain a prompt determination and adjudication of his claim and the determination of fair and reasonable compensation.

(Emphasis added). In turn, Section 103 of the Act defines "health care provider" as:

[A] primary health center or a person, corporation, university or other educational institution, facility, institution or other entity licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center, and except as to section 701(a), an officer, employee or agent of any of them acting in the course and scope of employment.

█ Thus, a health care provider is a health center or its equivalent or an agent thereof. It follows, then, that professional liability insurance through Mcare is only available when a person has sustained injury or death as a result of a tort or breach of contract by a health center or its equivalent or by an agent thereof.

In the present case, Patient was allegedly injured when she was struck in the ankle by a wheelchair operated by Zang. Zang, who was unaffiliated with Hospital in all respects except that he was·being treated there as a patient, was in no way an agent of Hospital. So, here, Patient sustained injury as a result of a tort by a fellow patient, *not* by a health care provider. That there may have been a secondary tort committed by Hospital with regard to supervising Zang or the wheelchairs is of no matter because Zang, not Hospital or its agents, was the instrumentality that caused Patient's injury.

Therefore, Mcare is not required to provide coverage to Hospital for Patient's suit. To hold otherwise would make Mcare responsible not only for providing coverage for all injuries caused by health care providers and their agents when furnishing medical services, but also for injuries caused by patients doing anything at all so long as a health care provider had responsibility for their care, greatly expanding the scope of the Act.

For the foregoing reasons, Mcare is not required to provide insurance coverage to Hospital for the claim of Patient against it.

### *ORDER*

AND NOW, this *4th* day of *January*, 2011, it is hereby ordered that judgment is entered in favor of the Medical Care Availability and Reduction of Error Fund (Mcare), that Mcare's exceptions are sustained, and that Mcare is not required to provide insurance coverage to Polyclinic Medical Center for the claim of Elise Lyon against it.