**ARIA HEALTH and Aria Health Physician Services, Petitioners**

**v.**

**MEDICAL CARE AVAILABILITY AND REDUCTION OF ERROR FUND, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 27, 2013.

Decided March 31, 2014.

Mark J. Schwemler, Blue Bell, for petitioners.

Elit R. Felix, II, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, and BROBSON, and Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

This case is a Petition for Review filed by Aria Health (Hospital), a hospital formerly known as Frankford Hospital, and Aria Health Physician Services (AHPS) (collectively, Petitioners) seeking reversal of a decision of the Medical Care Availability and Reduction of Error Fund (the Fund) that denied their request for coverage under the Medical Care Availability and Reduction of Error Act (MCARE Act) [1] in two personal injury actions filed in 2011 that are pending in the Philadelphia County Court of Common Pleas. Before this Court is Petitioners' motion for partial summary judgment seeking a ruling that the Fund is required to defend both Petitioners in both of those actions. For the reasons set forth below, we deny the motion in its entirety as to AHPS and deny the motion in part and grant it in part as to Hospital.

The underlying actions arise out of sexual assaults committed by Dr. Earl B. Bradley on two of his pediatric patients, plaintiffs G.H. and A.H.,[2] in the 1990s, when he provided medical care to them. (Petition for Review ¶¶ 5–6; G.H. and A.H. Amended Complaints, Exhibits 1 and 2 to Petition for Review.) The G.H. action, June Term, 2011 No. 2852, and the A.H. action, June Term, 2011 No. 2854, both assert claims that Hospital and AHPS are vicariously

---

1. Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. §§ 1303.101–1303.910.

2. Because of the nature of the allegations in the underlying actions and the fact that materials from those actions are subject to confidentiality orders and have been filed under seal, the Court refers to the plaintiffs in the underlying actions by their initials.

liable for Dr. Bradley's assaults on the basis of respondeat superior and agency (G.H. Amended Complaint Counts I–II ¶¶ 51–86; A.H. Amended Complaint Counts I–II ¶¶ 50–85), and that Hospital and AHPS allegedly breached duties to report his misconduct to third parties. (G.H. Amended Complaint Counts IX–XI ¶¶ 163–210; A.H. Amended Complaint Counts IX–XI ¶¶ 162–209.) The G.H. and A.H. actions also assert negligence claims that Hospital and AHPS allegedly violated duties to their patients in credentialing and retaining Dr. Bradley (G.H. Amended Complaint ¶¶ 18, 27, 90, 94(a), 105(a), 118(a); A.H. Amended Complaint ¶¶ 18, 27, 89, 93(a), 104(a), 117(a)), failed to supervise and monitor the medical care he was providing (G.H. Amended Complaint ¶¶ 19, 28, 91, 94(b), 103, 105(b), 116, 118(b); A.H. Amended Complaint ¶¶ 19, 28, 90, 93(b), 102, 104(b), 115, 117(b)), failed to maintain safe and adequate facilities (G.H. Amended Complaint ¶¶ 89, 94(c); A.H. Amended Complaint ¶¶ 88, 93(c)), and violated duties to "promulgate standards, procedures and rules to ensure quality care and safety for patients." (G.H. Amended Complaint ¶¶ 20, 29, 93, 104, 117; A.H. Amended Complaint ¶¶ 20, 29, 91, 103, 116.)

Hospital and AHPS submitted written requests to the Fund for defense and indemnification for the G.H. and A.H. actions pursuant to Section 715 of the MCARE Act, 40 P.S. § 1303.715, which provides coverage to participating health care providers for medical professional liability claims asserted more than four years after the alleged malpractice. (Petition for Review ¶ 8.) The Fund denied coverage to AHPS on the ground that it is not an entity entitled to coverage under the MCARE Act and denied coverage to Hospital because it concluded that the claims in the G.H. and A.H. actions do not constitute medical professional liability claims.

(Fund Letters of April 6, 2012 and October 12, 2012, Exhibits 3 and 5 to Petition for Review.)

On November 9, 2012, Hospital and AHPS filed this Petition for Review in this Court's original jurisdiction seeking reversal of the denial of coverage and an order directing the Fund to provide defense and indemnification coverage to them for the G.H. and A.H. actions. On January 9, 2013, the Fund filed a preliminary objection in the nature of a demurrer, contending that the claims in the G.H. and A.H. actions are not medical professional liability claims. Although the Fund accepted for purposes of its preliminary objection that both Petitioners were entitled to coverage for medical professional liability claims under the MCARE Act, it specifically noted that it did not admit that AHPS was covered by the MCARE Act and reserved the right to challenge whether AHPS was an entity to which MCARE Act coverage applies in the event that its preliminary objection was overruled. (Respondent's Preliminary Objection at 2 n.1.)

On April 15, 2013, this Court issued a single-judge opinion and order overruling the Fund's preliminary objection. In this ruling, the Court held that for a claim to constitute a medical professional liability claim covered by the Fund under Section 715 of the MCARE Act, it must arise directly from the provision of health care services and must allege conduct by the defendant that involved some exercise of medically related specialized training. (April 15, 2013 Opinion at 4–5.) Because Dr. Bradley's sexual assaults on G.H. and A.H. during the course of his medical care do not constitute the furnishing of health care services and claims of failure to report misconduct to parties outside the health care provider's facility do not arise directly out of the furnishing of medical services, the Court held that the claims

against Petitioners in the G.H. and A.H. actions for vicarious liability and failure to report do not constitute medical professional liability claims and are not covered by the Fund. (*Id.* at 5–6.) However, it was unclear whether other allegations in the G.H. and A.H. complaints, concerning misuse of anesthesia and sedative medications and Petitioners' credentialing and supervision of Dr. Bradley, asserted claims that Hospital or AHPS failed to exercise medical skill in providing treatment to them. (*Id.* at 9–11.) Because the Court was required to resolve all doubts in Petitioners' favor on preliminary objections, the Court overruled the Fund's preliminary objection.

Following the overruling of its preliminary objection, the Fund filed an answer and new matter to the Petition for Review in which it asserted that the G.H. and A.H. actions do not plead any claim against Hospital or AHPS for failure to exercise medical skill in furnishing health care services to them and specifically disputed that AHPS is a health care provider covered under the MCARE Act. (Response to Petition for Review, Answer ¶¶ 1, 3 and New Matter ¶¶ 9–12, 18–19.) On October 2, 2013, after some discovery between Petitioners and the Fund in this case, Petitioners filed the instant motion for partial summary judgment on the issue of defense coverage, seeking a judgment that the Fund is required to pay all past and future legal fees and expenses incurred by them in the defense of both the G.H. and A.H. actions and vacatur of the Fund's denial of coverage in its entirety. Although discovery was not complete and Petitioners were ordered on December 2, 2013, to provide additional interrogatory answers and produce additional documents, the Fund has not sought to submit any material from that additional discovery.

It is well settled that summary judgment may be granted only where the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Summers v. Certainteed Corp.*, 606 Pa. 294, 307, 997 A.2d 1152, 1159 (2010). Unlike the situation before the Court on the Fund's preliminary objection, the burden here is on Petitioners to demonstrate that under the undisputed facts they satisfy all requirements for coverage under Section 715 of the MCARE Act for their defense in the underlying actions.

Section 715 of the MCARE Act provides in relevant part:

(a) General rule.—If *a medical professional liability claim against a health care provider who was required to participate in the Medical Professional Liability Catastrophe Loss Fund under section 701(d) of the act of October 15, 1975 (P.L. 390, No. 111), known as the Health Care Services Malpractice Act,* is made more than four years after the breach of contract or tort occurred and if the claim is filed within the applicable statute of limitations, the claim shall be defended by the department if the department received a written request for indemnity and defense within 180 days of the date on which notice of the claim is first given to the participating health care provider or its insurer. . . .

(b) Payment.—If *a health care provider* is found liable for a claim defended by the department in accordance with subsection (a), the claim shall be paid by the fund. The limit of liability of the fund for a claim defended by the department under subsection (a) shall be $1,000,000 per occurrence.

40 P.S. § 1303.715(a), (b) (emphasis added). Thus, to be entitled to any coverage from the Fund under Section 715 of the MCARE Act for defense or indemnity, the party seeking coverage must show both 1) that it is a participating "health care provider" and 2) that the action at issue asserts a "medical professional liability claim" against it. 40 P.S. § 1303.715(a), (b).[3] Because the undisputed facts are not the same with respect to Hospital and AHPS, we must analyze Petitioners separately.

*Petitioner AHPS*

■ The Fund contends that AHPS has not satisfied the first of these two requirements. (Respondent's Memorandum of Law in Opposition to Motion for Partial Summary Judgment (Respondent's Br.) at 19–20.) We agree.

Section 103 of the MCARE Act defines "health care provider" as:

A primary health care center or a person, including a corporation, university or other educational institution licensed or approved by the Commonwealth to provide health care or professional medical services as a physician, a certified nurse midwife, a podiatrist, hospital, nursing home, birth center and except, as to section 711(a), an officer, employee or agent of any of them acting in the course and scope of employment.

40 P.S. § 1303.103. AHPS has not shown that it is a "health care provider" under the MCARE Act. It has not averred that it is a "primary health care center," which is defined by the MCARE Act as a "commu-nity-based nonprofit corporation meeting standards prescribed by the Department of Health which provides preventive, diagnostic, therapeutic and basic emergency health care by licensed practitioners," nor has it pleaded that it is "licensed or approved by the Commonwealth to provide health care or professional medical services." 40 P.S. § 1303.103. In addition, no showing has been made that AHPS is an entity that "was required to participate in the Medical Professional Liability Catastrophe Loss Fund." 40 P.S. § 1303.715(a).

The only information that Petitioners have provided concerning AHPS consists of the vague and insufficient averment that it "provide[s] health care services at medical facilities such as hospitals" (Petition for Review ¶ 3), and even that averment is denied by the Fund. (Response to Petition for Review, Answer ¶ 3.) Because AHPS has not established that it is an entity entitled to coverage under the MCARE Act, AHPS is not on this record entitled to judgment in its favor, regardless of whether the claims against it are "medical professional liability claims." Accordingly, Petitioners' motion for partial summary judgment must be denied with respect to AHPS.

*Petitioner Hospital*

■ The Fund accepts as undisputed that Hospital is a participating "health care provider" covered under Section 715 of the MCARE Act. (Respondent's Br. at 19.) We must therefore determine whether Petitioners have shown that the G.H. and A.H. actions assert any "medical professional liability claims" against Hospital.

---

3. The claim must also have been made more than four years after the malpractice and a request for coverage must be made within 180 days. 40 P.S. § 1303.715(a). There is no dispute, however, that both the G.H. and A.H. actions were filed more than four years after the events at issue and that Hospital timely submit a request for coverage. (Respondent's Memorandum of Law in Opposition to Motion for Partial Summary Judgment at ¶ 19; Respondent's Answer to Motion for Partial Summary Judgment ¶ 10.) It is unnecessary to determine whether AHPS made a timely request for coverage in light of our conclusion below that AHPS has not shown that it is a covered health care provider.

■ As the Court explained in its April 15, 2013 opinion in this case, the term "medical professional liability claim" is defined by the MCARE Act as "[a]ny claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should have been provided." 40 P.S. § 1303.103. For a claim to constitute a medical professional liability claim covered by the Fund under Section 715 of the MCARE Act, it must therefore arise directly from the provision of health care services. *Strine v. Medical Care Availability and Reduction of Error Fund,* 586 Pa. 395, 403–04, 894 A.2d 733, 738–39 (2006); *Connolly v. Medical Professional Liability Catastrophe Loss Fund,* 559 Pa. 1, 5–6, 739 A.2d 104, 106 (1999).[4] Where the only health care services at issue were provided by others and not by the defendant, the claims against that defendant do not arise directly from the provision of health care services and are not covered by the MCARE Act. *Connolly,* 559 Pa. at 5–6, 739 A.2d at 106.

■ In addition, to meet the MCARE Act's requirement that the claim result from "the furnishing of health care services," the claim must allege conduct by the defendant that involved some exercise of a medical skill associated with specialized training. *Strine,* 586 Pa. at 404–06, 894 A.2d at 739–40; *Physicians Insurance Co. v. Pistone,* 555 Pa. 616, 626, 726 A.2d 339, 344 (1999);[5] *Polyclinic Medical Center v. Medical Care Availability and Reduction of Error Fund,* 13 A.3d 561, 564 (Pa.Cmwlth.2011); *St. Joseph Medical Center v. Medical Professional Liability Catastrophe Loss Fund,* 854 A.2d 692, 695–96 (Pa.Cmwlth.2004), *aff'd without op.,* 583 Pa. 412, 879 A.2d 146 (2005); *Stenton Hall Nursing & Rehabilitation Center v. Medical Professional Liability Catastro-*

---

4. These cases and *St. Joseph Medical Center v. Medical Professional Liability Catastrophe Loss Fund,* 854 A.2d 692 (Pa.Cmwlth.2004), *aff'd without op.,* 583 Pa. 412, 879 A.2d 146 (2005), *Stenton Hall Nursing & Rehabilitation Center v. Medical Professional Liability Catastrophe Loss Fund,* 829 A.2d 377 (Pa.Cmwlth. 2003) (*en banc*), and *Polyclinic Medical Center v. Medical Care Availability and Reduction of Error Fund,* 13 A.3d 561 (Pa.Cmwlth.2011), discussed below, were decided under the predecessor Health Care Services Malpractice Act (Malpractice Act), Act of October 15, 1975, P.L. 390, *as amended,* formerly 40 P.S. §§ 1301.101–1301.1006 (repealed by the MCARE Act). The language of the Malpractice Act providing coverage for "professional liability" claims, however, is essentially the same as the language of the MCARE Act providing coverage for "medical professional liability" claims. *Compare* Section 103 of the Malpractice Act, 40 P.S. § 1301.103 ("liability on the part of a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of medical services which were or should have been provided") and *Strine,* 586 Pa. at 406, 894 A.2d at 740 (under the Malpractice Act, " 'medical services' signifies the professional health care services of a covered health care provider") *with* 40 P.S. §§ 1303.103 ("Any claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should have been provided"). As the Court held in its April 15, 2013 opinion, the case law under the Malpractice Act is therefore fully applicable to the issue of whether an action asserts a "medical professional liability claim" covered under the MCARE Act.

5. While *Pistone* involved a private professional liability insurance policy, the policy language interpreted by the Supreme Court in that case, "arising out of the rendering of ... professional health care services," 555 Pa. 616 at 619, 726 A.2d at 340, is similar to the language of the MCARE Act. *Pistone* is therefore persuasive authority in interpreting the term "medical professional liability claim" under the MCARE Act. *See Strine,* 586 Pa. at 405–06, 894 A.2d at 739–40.

*phe Loss Fund*, 829 A.2d 377, 381–82 (Pa. Cmwlth.2003) (*en banc*). "Not all negligence cases against health care providers deal with the furnishing of medical services because they do not all allege harm caused by the application of medical skills associated with specialized training." *Polyclinic Medical Center*, 13 A.3d at 564.

The exhibits submitted by Petitioners with this motion show that the claims asserted against Hospital in the A.H. action are not "medical professional liability claims" covered by the MCARE Act. It is clear from those exhibits that no claim is made by the plaintiff in the A.H. action that she was ever treated by Hospital. (Petitioners' Summary Judgment Exhibits, Exhibit 9 at 1, Exhibit 11 at 2, Exhibit 13 at 4, Exhibit 14 at 2, Exhibit 17, A.H. Petition at 4.) Indeed, Petitioners specifically admit that "it is undisputed that [A.H.] was never hospitalized at Aria Health." (Petitioners' Summary Judgment Exhibit 17, A.H. Petition at 4.) Petitioners' assertion that both plaintiffs allege that the assaults occurred "while they were receiving treatment at Aria Health" (Petitioners' Memorandum of Law in Support of Motion for Partial Summary Judgment (Petitioners' Br.) at 2–3) is not to the contrary. Petitioners define "Aria Health" in their summary judgment papers as Hospital and AHPS collectively (Petitioners' Br. at 1) and the paragraphs of the A.H. complaint to which Petitioners cite either allege only that Dr. Bradley committed the assaults while he was furnishing pediatric health care services (A.H. Amended Complaint ¶¶ 33–36), or make conclusory allegations that Dr. Bradley's medical care was on behalf of Hospital. (A.H. Amended Complaint ¶¶ 57, 66, 95, 108, 112, 133.)[6] None of those paragraphs avers that any of the assaults on A.H. occurred in the course of any treatment at Hospital.

 While the A.H. action does assert claims against Hospital, in the absence of any contention by A.H. that she was treated at Hospital or that individuals for whom Hospital is claimed to be liable other than Dr. Bradley furnished health care to her, any claims in the A.H. action that Hospital furnished health care services to her are necessarily predicated on the contention that Hospital is vicariously liable for Dr. Bradley's conduct. As the Court previously held in its April 15, 2013 opinion, those claims are not covered by the MCARE Act. Sexual assaults perpetrated by a physician during the course of medical care as a matter of law do not constitute the furnishing of health care services. *Pistone*, 555 Pa. at 625–26, 726 A.2d at 344. Accordingly, claims based on Dr. Bradley's treatment and not on any other furnishing of health care services by Hospital cannot constitute "medical professional liability" claims. Because there is no claim in the A.H. action that Hospital provided any treatment to the plaintiff other than vicariously through Dr. Bradley, the claims against Hospital in that action do not satisfy the requirement that they arise directly from the furnishing of health care services and therefore cannot constitute "medical professional liability claims" covered by the MCARE Act, regardless of what duties A.H. alleges that Hospital breached. *Strine*, 586 Pa. at 403–04, 894 A.2d at 738–39; *Connolly*, 559 Pa. at 5–6, 739 A.2d at 106.

In contrast, the G.H. action does assert claims that Hospital provided medical treatment to the plaintiff. The exhibits submitted by Petitioners with their motion show that G.H. claims that he was treated twice at Hospital and was sexually assault-

---

**6.** The remaining paragraphs to which Petitioners cite, (A.H. Amended Complaint ¶¶ 75, 84, 121, 125, 145, 149), make allegations only concerning AHPS, not Hospital.

ed by Dr. Bradley during at least one of those hospitalizations. (Petitioners' Summary Judgment Exhibits, Exhibit 9 at 1, Exhibit 10 at 2–3, Exhibit 11 at 2.) Because the G.H. action alleges that Hospital itself provided medical treatment to the plaintiff, claims against Hospital in the G.H. action can constitute "medical professional liability claims," if they assert claims for acts or omissions on the part of Hospital personnel other than Dr. Bradley in that treatment, and if those alleged acts or omissions involved some exercise of a medical skill associated with specialized training.

■ As the Court previously held in its April 15, 2013 opinion, some of the claims against Hospital in the G.H. action as a matter of law are not covered by the MCARE Act. The G.H. complaint, as is noted above, pleads that Hospital is vicariously liable for Dr. Bradley's assaults (G.H. Amended Complaint Count I ¶¶ 51–68), and that Hospital allegedly breached duties to report his misconduct to third parties. (G.H. Amended Complaint Counts IX and XI ¶¶ 163–183, 202–210.) As discussed above and in this Court's April 15, 2013 opinion, the claims based on vicarious liability are not covered by the MCARE Act because Dr. Bradley's conduct does not constitute the furnishing of health care services. *Pistone*, 555 Pa. at 625–26, 726 A.2d at 344. Claims of failure to warn patients or other third parties and claims of failure to report Dr. Bradley's conduct to government authorities are likewise not covered by the MCARE Act because they do not arise directly from the furnishing of medical services. *Connolly*, 559 Pa. at 5–6, 739 A.2d at 106 (claim that

injury was caused by failure to advise patient of physician's impaired condition was not covered under the Malpractice Act because failure to advise did not constitute the furnishing of medical services).

■ The claims against Hospital, however, are not limited to claims of vicarious liability for Dr. Bradley's assaults and claims of failure to report. The G.H. complaint also asserts that Hospital acted negligently in its care and treatment of him, in its credentialing and retaining of Dr. Bradley and in failing to supervise and chaperone Dr. Bradley's treatment, maintain safe and adequate facilities, and promulgate standards, procedures and rules to ensure quality care and safety. (G.H. Amended Complaint ¶¶ 18–20, 27–29, 89–93, 94(a)-(c), 103–05.) These are claims based on Hospital's own conduct in providing medical care, separate from Dr. Bradley's liability. *Welsh v. Bulger*, 548 Pa. 504, 513–16, 698 A.2d 581, 585–86 (1997). Therefore, the fact that Dr. Bradley's conduct is not covered by the MCARE Act does not bar Hospital from coverage.

■ The record on this motion shows that the G.H. complaint asserts at least one claim against Hospital that involves some exercise of a medical skill associated with specialized training: a claim for alleged violation of medical standards concerning the chaperoning of pediatric examinations (G.H. Amended Complaint ¶¶ 19, 35, 38, 91, 94(c), 103; Petitioners' Summary Judgment Exhibits, Exhibit 11, Expert Report of Thomas Bojko, M.D., at 2, 4–5, and Exhibit 12, Expert Report of Bruce Podrat at 4.)[7]

---

7. The Fund argues as a threshold matter that this Court cannot consider expert reports from the underlying action because coverage must be determined based on the allegations of the underlying complaint. This contention is without merit. While it is true that cover-

age under private insurance policies must be determined based on the allegations of the underlying complaint and not on discovery materials from that action that assert claims clearly different from those pleaded in the complaint, *Kvaerner Metals Division of Kvaer-*

The Fund argues that the negligence asserted in this claim involves no medically related specialized training. The Fund is correct that a claim of failure to supervise medical employees to prevent them from assaulting ordinary adult patients does not involve issues of medically related training or skill and therefore does not constitute a medical professional liability claim. *St. Joseph Medical Center*, 854 A.2d at 695–96. Here, however, the claim asserted by plaintiff is that medical standards governing treatment of pediatric patients required a chaperone or parental presence. The plaintiff's expert reports in the G.H. action specifically reference and base this claim on medical standards for hospital and pediatric care and assert that Hospital policy discouraging parents from being present when their child was treated violated pediatric care standards. (Petitioners' Summary Judgment Exhibits, Exhibit 11, Expert Report of Thomas Bojko, M.D., at 4–5, and Exhibit 12, Expert Report of Bruce Podrat at 4.) Hospital's defense against these claims is based on the contention that the medical standards at the time did not require chaperoning or parental presence for pediatric treatment. (Petitioners' Summary Judgment Exhibits, Exhibit 13, Expert Report of David J.

Shulkin, M.D., at 9, 10, Exhibit 14, Expert Report of Lori E. Polidore, R.N., at 4.)

While the providing of chaperones or permitting parental presence does not require a high level of intellectual skill or advanced training, that is not dispositive of whether the claim sufficiently involves a medical skill associated with specialized training to constitute a "medical professional liability claim" under the MCARE Act. *Strine*, 586 Pa. at 409–11, 894 A.2d at 742–43. Where, as here, the care at issue is for an individual who is not a competent adult, a lower level of specialized skill and training may satisfy this requirement. *Id.* at 409–10, 894 A.2d at 742. Our Supreme Court made clear in *Strine* that the critical question is whether the claim asserts a failure to exercise professional medically related judgment in the providing of health care. *Id.* at 410, 894 A.2d at 742. In *Strine*, the Court held that failure to monitor a bath given to an incapacitated person in a health care institution involved sufficient skill and specialized training to be covered as a professional liability claim under the Malpractice Act, despite the fact that no high level of training or medical skill was required, because it involved "*the exercise of professional judgment* as to

ner *U.S., Inc. v. Commercial Union Insurance Co.*, 589 Pa. 317, 327–31, 908 A.2d 888, 894–96 (2006); *Snyder Heating Co. v. Pennsylvania Manufacturers' Association Insurance Co.*, 715 A.2d 483, 486–88 (Pa.Super.1998), nothing in this Court's consideration of Petitioners' submissions violates those requirements. The claims that this Court addresses here, negligent chaperoning of pediatric treatment and negligent credentialing of physicians, are both clearly asserted in the G.H. complaint. (G.H. Amended Complaint ¶¶ 18–19, 27, 35, 38, 90–91, 94(a) and (c), 103, 105(a).) The expert reports submitted by Petitioners do not add different claims or change any of the claims from what was asserted in the complaint. Rather, the Court examines the expert reports here to determine whether the claims asserted in the complaint in the G.H.

action involve some exercise of medical skill associated with specialized training. Where, as here, the underlying action is at an advanced stage and discovery or evidence from the underlying action is available, it is completely proper for the Court to consider such materials in determining whether the factual claims pleaded in the underlying action are medical professional liability claims. *See Strine*, 586 Pa. at 406–11, 894 A.2d at 740–43 (considering testimony in underlying action in determining whether claims against health care provider involved medical skill associated with specialized training); *Polyclinic Medical Center*, 13 A.3d at 562 (considering proceedings in underlying case, including expert report and medical records, as the "necessary context" for determining coverage under the Malpractice Act).

considerations such as when and how frequently to check the water temperature, whether a person in [that] condition would be able to remove herself from the tub if the water became too hot, and whether there was any likelihood of any other mishap such as drowning." 586 Pa. at 409–11, 894 A.2d at 742–43 (emphasis added). The claim that Hospital breached pediatric medical standards in health care that it provided asserts a claim of failure to exercise professional medically related judgment and is therefore a "medical professional liability claim" covered by the MCARE Act.

■ Hospital also asserts that it is entitled to coverage under the MCARE Act for G.H.'s claim that it was negligent in credentialing Dr. Bradley. (G.H. Amended Complaint ¶¶ 18, 27, 90, 94(a), 105(a).) We do not agree. The evaluation of a physician's competence involves medical expertise and judgment. *See, e.g., Welsh,* 548 Pa. at 513–16, 698 A.2d at 585–86. The claim that Hospital was negligent in its credentialing of Dr. Bradley, however, does not assert any failure to exercise medical judgment in evaluating Dr. Bradley or any negligent determination that he was medically competent. Rather, G.H.'s expert who addresses this issue opines that Hospital was negligent in failing to fulfill procedural requirements for credentialing, such as conducting background checks and documentation of the credentialing and recredentialing process. (Petitioners' Summary Judgment Exhibit 11, Expert Report of Thomas Bojko, M.D., at 2–4.) To the extent that G.H.'s expert asserts that Hospital was negligent in failing to determine Dr. Bradley's competence, he opines only that Hospital was negligent in failing to obtain full and adequate information concerning Dr. Bradley in its investigation, not that it negligently determined that Dr. Bradley was competent in his medical skills and abilities. (*Id.* at 3.) Indeed, there is no claim in the G.H. action that Dr. Bradley lacked the requisite medical skills and training to be a competent physician or that any lack of medical skill on Dr. Bradley's part cause harm to G.H. Because the claim against Hospital for negligent credentialing does not involve a failure by Hospital to exercise any medical judgment or skill, it is not a "medical professional liability claim" covered by the MCARE Act.[8]

*The Relief Requested by Petitioners*

■ Because Hospital has demonstrated that the negligent failure to chaperone claim asserted against it in the G.H. action is a "medical professional liability claim," it is entitled to defense coverage from the Fund for that claim under Section 715(a) of the MCARE Act. As is discussed above, however, the G.H. complaint also asserts

8. The allegations of the complaint and the expert reports could also be read as possibly including a claim of alleged improper safety procedures with respect to anesthesia and sedative medications. (G.H. Amended Complaint ¶¶ 20, 29, 35, 38–39, 58, 76, 93, 104; Petitioners' Summary Judgment Exhibits, Exhibit 10, Expert Report of Alisa L. Starbuck, R.N., at 4–5, and Exhibit 11, Expert Report of Thomas Bojko, M.D., at 2.) The complaint and expert reports, however, are vague in this regard, and the Fund disputes that such a claim is actually being asserted by plaintiff in the G.H. action at all. Although Petitioners represent that the G.H. action is on the verge of trial (Petitioners' Motion for Partial Summary Judgment at 7 n.2) and there should therefore be clearer evidence as to whether such a claim has been asserted in the G.H. action, Petitioners have put forth nothing on this issue other than this Court's denial of the Fund's preliminary objection. Because the burden is on Hospital to show that it is entitled to judgment and all reasonable inferences must be taken against it on this motion, *Summers,* 606 Pa. at 307, 310, 997 A.2d at 1159, 1161, the Court cannot grant summary judgment with respect to this third possible claim.

significant claims against Hospital that are not covered by the MCARE Act. Indeed, Petitioners themselves have represented that one of the noncovered claims, the claim that they are vicariously liable for Dr. Bradley's assaults, is the primary claim in the G.H. action, the "cornerstone" of G.H.'s claims against them. (Petitioners' Summary Judgment Exhibit 17, G.H. Petition at 11.)

■ In private insurance, where a complaint asserts multiple claims, some of which are within the scope of the policy's coverage and others of which are not covered, the insurer has a duty to defend the action until all covered claims are removed from the action. *Penn–America Insurance Co. v. Peccadillos, Inc.*, 27 A.3d 259, 265 (Pa.Super.2011); *Biborosch v. Transamerica Insurance Co.*, 412 Pa.Super. 505, 603 A.2d 1050, 1057–58 (1992); *Seaboard Industries, Inc. v. Monaco*, 258 Pa.Super. 170, 392 A.2d 738, 743 (1978). Based on this principle, Hospital seeks a judgment that the Fund is required to pay all of its legal fees and other defense costs in the G.H. action.

■ Hospital's claim for all of its defense costs fails for two reasons. First, the MCARE Act is a legislative enactment, not a private insurance policy, and must be interpreted in accordance with its statutory language. *See Strine*, 586 Pa. at 406, 894 A.2d at 740; *Pennsylvania Medical Society Liability Ins. Co. v. Medical Professional Liability Catastrophe Loss Fund*, 577 Pa. 87, 97, 842 A.2d 379, 385 (2004). Case law governing private insurance policies can provide persuasive guidance in interpreting the Fund's coverage obligations where the policy language is similar to the statutory language and the purpose of the coverage is the same. *Strine*, 586 Pa. at 405–06, 894 A.2d at 740. But where insurance policy language differs from the MCARE Act or the case law

governing private insurance conflicts with the MCARE Act's language or purpose, it is the MCARE Act's provisions that govern the Fund's liability, not the law of private insurance. *Pennsylvania Medical Society Liability Ins. Co.*, 577 Pa. at 97, 842 A.2d at 384–85 (case law governing late notice to private insurers is inapplicable to Malpractice Act 180–day notice requirement).

The language of Section 715(a) of the MCARE Act is different from insurance policy language concerning the duty to defend. Section 715(a) provides that the Fund's obligation is to defend *claims* that meet its coverage requirements, not actions or suits in which such claims are asserted. 40 P.S. § 1303.715(a) ("If a medical professional liability *claim* against a health care provider who was required to participate in the Medical Professional Liability Catastrophe Loss Fund ... is made more than four years after the breach of contract or tort occurred and if the *claim* is filed within the applicable statute of limitations, *the claim shall be defended* ")(emphasis added). The MCARE Act makes clear that the term "claim" is not synonymous with the entire suit or action against a health care provider, as it separately defines "medical professional liability action" as an action or other proceeding "in which a medical professional liability claim is asserted." 40 P.S. § 1303.103. In contrast, private insurance policy language on which the broad duty to defend is based imposes a duty to defend the insured against any "suit" seeking damages covered by the policy. *See, e.g., Penn–America Insurance Co.*, 27 A.3d at 267. Because the Fund's obligation under Section 715(a) is to defend covered claims, not actions against the health care provider, it is not automatically obligated to pay all defense costs in an action that asserts claims that are not "medical professional

liability claims," simply because the plaintiff has also pleaded a covered claim in the same action.

 Second, not all of Hospital's legal expenses in the G.H. action would be covered by the duty to defend even if the case law governing private insurance applied. An insurer's duty to defend does not cover expenses incurred solely in the defense of claims that are excluded from coverage. *Creed v. Allstate Insurance Co.*, 365 Pa.Super. 136, 529 A.2d 10, 11, 13 (1987) (insurer not liable for counsel fees incurred in defending punitive damages claims because policy did not cover punitive damages). Here, it is clear from Petitioners' submissions that at least some of Hospital's legal expenses in the G.H. action were incurred solely in the defense of claims that are not "medical professional liability claims." Petitioners have, for example, filed preliminary objections, a summary judgment motion and an attempted interlocutory appeal in the G.H. action directed at the vicarious liability claim against them. (Petitioners' Summary Judgment Exhibit 17, G.H. Petition at 1–3, 5, 7–12.) In addition, Petitioners have represented that the vicarious liability claim requires substantial trial time that is not required to litigate and defend against the other claims in the G.H. action. (*Id.* at 11–12.) There is no evidence before this Court as to the amount of defense costs incurred by Hospital in the G.H. action that do not relate solely to the noncovered claims.

Petitioners also request that the Court vacate the Fund's coverage determination in its entirety. This request for relief is likewise overbroad. As is set forth above, there are material disputes of fact as to whether AHPS is covered by the MCARE Act and the Fund's denial of coverage to Hospital for the A.H. action is not in error. Petitioners therefore have not shown that the Fund's determination must be vacated in its entirety.

Accordingly, the Court enters the following order denying Petitioners' motion for partial summary judgment as to Petitioner AHPS, denying the motion as to Petitioner Hospital with respect to the A.H. action, and granting the motion in part as to Petitioner Hospital with respect to the G.H. action.

## ORDER

AND NOW, this 31st day of March, 2014, upon consideration of Petitioners' Motion for Partial Summary Judgment, Respondent's Answer to Petitioners' Motion for Partial Summary Judgment, the briefs of the parties with respect thereto, and the record in this case, it is hereby ORDERED as follows:

1. The Motion for Partial Summary Judgment is DENIED as to Petitioner Aria Health Physician Services.

2. The Motion for Partial Summary Judgment is DENIED as to Petitioner Aria Health with respect to the case docketed in the Philadelphia County Court of Common Pleas at June Term, 2011 No. 2854.

3. The Motion for Partial Summary Judgment is GRANTED, in part, as to Petitioner Aria Health with respect to the case docketed in the Philadelphia County Court of Common Pleas at June Term, 2011 No. 2852, insofar as it seeks to require that the Medical Care Availability and Reduction of Error Fund defend Aria Health in that case as to the claim for negligent failure to provide chaperoning in its pediatric care held covered in the foregoing opinion, and it is ORDERED that the Medical Care Availability and Reduc-

tion of Error Fund provide defense coverage to Aria Health with respect to the claim asserted against Aria Health in said action for negligent failure to provide chaperoning in its pediatric care consistent with the foregoing opinion.

4. The Motion for Partial Summary Judgment is DENIED in all other respects.